1  David A. Bahr (Oregon State Bar No. 90199)
   (Applicant for admission *pro hac vice* pending)
2  Bahr Law Offices, P.C.
   1035 ½ Monroe Street
3  Eugene, OR 97402
   (541) 556-6439 Voice
4  davebahr@mindspring.com

5
   Paul Kampmeier (Washington Bar No. 31560)
6  Kampmeier & Knutsen PLLC
   615 Second Avenue, Suite 360
7  Seattle, Washington 98104
   (206) 223-4088 ext. 4
8  paul@kampmeierknutsen.com

9
   *Plaintiffs' Counsel*
10

11
                **IN THE UNITED STATES DISTRICT COURT**
12          **FOR THE WESTERN DISTRICT OF WASHINGTON**
                          **AT SEATTLE**
13

14

15 **ALPINE LAKES PROTECTION SOCIETY**,    Case No. _____
   **KITTITAS AUDUBON SOCIETY,** and
16 **SIERRA CLUB**, non-profit corporations,
                                            **COMPLAINT FOR DECLARATORY
17      Plaintiffs,                         AND INJUNCTIVE RELIEF**

18      *vs.*

19 **UNITED STATES FOREST SERVICE**, an
   agency of the U.S. Department of Agriculture, and
20 **MIKE WILLIAMS**, in his official capacity as
   Forest Supervisor for the Okanogan-Wenatchee
21 National Forest,

22         Defendants.

23

24

25

26

27

28

# I.     INTRODUCTION

**1.**     This is an action for declaratory and injunctive relief against the United States Forest Service ("USFS") and Mike Williams, Supervisor of the Okanogan-Wenatchee National Forest (collectively "Defendants"). Plaintiffs Alpine Lakes Protection Society ("ALPS"), Kittitas Audubon Society ("Kittitas Audubon"), and Sierra Club challenge Defendants' decision to open 350 miles of OWNF roads to a type of off-road vehicle called Wheeled All-Terrain Vehicles ("WATVs") for the first time. As used in this Complaint, "off-road vehicle" or "ORV" is the generic term used to describe motorized vehicles equipped for travel off of improved and maintained roads. Such vehicles include high-clearance jeeps and trucks, cross-country motorcycles, dune buggies, snowmobiles, all-terrain vehicles ("ATVs"), and the subset of ATVs defined by Washington State law as Wheeled All-Terrain Vehicles.

**2.**     This action arises under, and alleges violations of, the Administrative Procedure Act ("APA"), 5 U.S.C. § 501 *et seq.*; the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*; Executive Order 11644, as amended by Executive Order 11989; and implementing regulations established pursuant to these federal statutes and executive orders that protect the rights and interests of the Plaintiffs in this matter, including but not limited to the Travel Management Rule, 36 C.F.R Part 212.1, *et seq*.

**3.**     Plaintiffs allege Defendants violated these laws by opening roads in the Okanogan-Wenatchee National Forest ("OWNF" or "Forest") to WATV use for the first time without first complying with the Forest Service's Travel Management Rule and by failing to evaluate environmental impacts under NEPA before authorizing the new use. Plaintiffs seek an order invalidating the decision and awarding Plaintiffs their costs and reasonable attorneys' fees. Plaintiffs also may seek preliminary or permanent injunctive relief if necessary to prevent irreparable injury to the environment and to Plaintiffs' interests, as well as any other necessary or appropriate relief.

# II.     JURISDICTION

**4.**     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), § 2201 (declaratory relief), § 2202 (injunctive relief), and 28 U.S.C. § 1346 (United States as a defendant).

An actual, justiciable controversy exists between Plaintiffs and Defendants. The requested relief is proper under 28 U.S.C. §§ 2201 & 2202, and 5 U.S.C. §§ 705 & 706.

### III.    VENUE

**5.**        Venue is properly vested in this Court under 28 U.S.C § 1391(e). ALPS resides in this district. Sierra Club resides in this district. Many of Plaintiffs' members reside in this district. And no real property is involved in the action. Venue is also properly vested in this Court because the new WATV routes at issue in this action include road sections and facilities that were the subject of this Court's rulings in the Goose-Maverick case, *North Cascades Conservation Council v. U.S. Forest Service*, Civil No. C99-0889-R, reported at 98 F. Supp.2d 1193 (W.D. Wash. 1999), the Lower Mad River case, *Mountaineers v. U.S. Forest Service,* Civil No. C05-1418-RSM, reported at 445 F. Supp.2d 1235 (W.D. Wash. 2006), and the Ghost Roads case, *Northwest Ecosystems Alliance v. U.S. Forest Service*, Civil No.C96-451R.

### IV.    PARTIES

**6.**        Plaintiff Alpine Lakes Protection Society ("ALPS") is a non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Alpine Lakes Wilderness and surrounding forests. Its registered office is located in Seattle, Washington. ALPS has about 200 members. Members of ALPS include biologists, outfitters, recreationists, and researchers who observe, enjoy, and appreciate Washington's native wildlife, water quality, and quality of terrestrial habitat, as well as the wilderness, roadless, and unroaded character found in OWNF. ALPS and its members expect to continue to do so in the future in OWNF. ALPS has been active in OWNF's forest planning processes, including OWNF's ongoing Travel Management process from which the challenged WATV routes were omitted. The professional and recreational activities of ALPS and its members are directly affected by the new WATV routes and Defendants' failure to perform their lawful duty to protect and conserve these ecosystems. ALPS brings this action on its own behalf and on behalf of its adversely affected members. ALPS and its members regularly use and will continue to use the trails and other areas within OWNF – including the specific roads and adjacent areas at issue in this Complaint – for recreational and aesthetic pursuits, including, but not limited to, fishing, hiking, hunting, wildlife

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

appreciation, nature observation, photography, aesthetic enjoyment, and spiritual rejuvenation. The degraded conditions of OWNF are a detriment to achieving the group's goal of protection and restoration, and ALPS' members continue to be injured by the mismanagement of OWNF challenged in this action. These injuries would be redressed by the relief sought in this Complaint.

7.      Plaintiff Kittitas Audubon Society is suing on behalf of itself and its members. Kittitas Audubon is a non-profit corporation organized and existing under the laws of the State of Washington. Kittitas Audubon is a chapter of the National Audubon Society and maintains its principal place of business in Washington. The organizational mission of Kittitas Audubon is to appreciate and conserve nature, especially birds and their habitat, through education and conservation efforts. These organizational interests are injured by the violations complained of herein. The group is a membership organization and has members who are injured by the violations complained of herein. Kittitas Audubon brings this action on its own behalf and on behalf of its adversely affected members, seeking redress through the relief sought in this Complaint.

8.      Plaintiff Sierra Club is America's oldest and largest grassroots conservation organization, founded by John Muir in 1892. It has more than 1,500,000 members and supporters nationwide, including 33,000 members here in Washington, and is dedicated to protecting the earth's ecosystems and resources and to educating the public about its mission. Sierra Club's Washington State Chapter is based in Seattle and its members have a long history of appreciation of, advocacy for, and protection of OWNF wildlands and timberlands and the wildlife living therein. This includes countless organized outings, participation in the designation of wilderness lands, and advocating for the protection and conservation of natural resources in proposed timber sales and travel plans. Members of the Washington State Chapter of Sierra Club observe, enjoy and appreciate Washington's native wildlife, water quality and terrestrial habitat quality and expect to continue to do so in the future, including on OWNF lands. Sierra Club has been active in OWNF's forest planning processes, including OWNF's ongoing Travel Management process from which the challenged WATV routes were omitted. Sierra Club members' professional and recreational activities are directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems and by Defendants' approval of the

new WATV routes. Sierra Club brings this action on its own behalf and on behalf of its adversely affected members. The relief requested in this lawsuit can redress Sierra Club's and its members' injuries.

9.      This suit is brought by ALPS, Kittitas Audubon and Sierra Club on their own behalf as well as their adversely affected members and staff. Plaintiffs and their members' present and future intended use of OWNF and the waters therein is and will be directly and adversely affected by the decisions, actions, and failures to act alleged in this Complaint. Those adverse effects include, but are not limited to: (1) disruption of their recreation experiences; (2) reduction and impairment of recreation opportunities; (3) impacts to native plants and wildlife and their habitats within OWNF; (4) impacts to riparian areas, wet meadows, and water quality; and (5) impaired aesthetic value of trails and other areas caused by USFS' mismanagement of motorized travel on OWNF lands. The ongoing injuries caused by Defendants' failure to follow mandatory procedures in designating and reviewing motorized travel include, but are not limited to, increased water, noise and air pollution on OWNF lands and surrounding environs, degradation and impairment of the Forest landscape, disruption of wildlife, destruction of native plants, destruction of soil structure and quality, increased user conflicts, and loss of opportunities for solitude and nature appreciation. In addition, Plaintiffs and their members have an interest in ensuring that the Forest Service complies with all applicable laws, regulations, and procedures pertaining to the management of public lands.

10.      Plaintiffs and their members use OWNF lands and the waters therein that will be managed under the challenged decision for recreational, scientific, educational, aesthetic, and commercial purposes and intend to continue to do so in the future. Plaintiffs and their members derive recreational, scientific, educational, aesthetic, and commercial benefits from the OWNF lands through fish and wildlife observation, hiking, study, photography, recreational boating and rafting, and recreational fishing.

11.      The decision at issue herein approves motorized use and activities that will significantly degrade the natural values currently enjoyed by Plaintiffs and their members.

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

**12.**     The decision approving the new WATV routes creates an actual and imminent infringement of Plaintiffs' interests.

**13.**     The decision approving the new WATV routes, and its imminent harm to Plaintiffs, is traceable directly to Defendants' actions.

**14.**     The aesthetic, conservation, recreational, commercial, scientific, educational, and procedural interests of Plaintiffs and their respective staff and members described above have been, are being, and, unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by Defendants' failure to comply with the law as described below. Plaintiffs have no other adequate remedy at law.

**15.**     Because Defendants' actions approving the challenged WATV routes violate several procedural and substantive laws, a favorable decision by this Court will redress the actual and imminent injury to the Plaintiffs.

**16.**     Defendant United States Forest Service is an agency of the United States Department of Agriculture. USFS is responsible for the administration and management of the federal lands subject to this action, including implementation of NEPA, the APA, the Executive Orders and the various laws and policies protecting the rights and interests of the Plaintiffs in this matter.

**17.**     Defendant Mike Williams is the Forest Supervisor for OWNF. In that capacity, he is directly responsible for properly managing vehicle and road and trail use in the Forest and ensuring that ORV route designation and use in the Forest complies with the Okanogan-Wenatchee Forest Plan and all other applicable laws. He officially resides in Wenatchee, Washington. Defendant Williams is sued in his official capacity.

## V.   LEGAL CONTEXT

### The Administrative Procedure Act

**18.**     This case is brought pursuant to the judicial review provisions of the APA. The APA allows persons and organizations to challenge final federal agency actions in the federal courts. 5 U.S.C. §§ 702, 704. Pursuant to the APA, courts must hold unlawful and set aside agency actions found to be

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

1    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §

2    706(2)(A), (D).

### The National Forest Management Act and Travel Management

3

4    **19.**    Through the National Forest Management Act, 16 U.S.C. § 1600 *et seq*. ("NFMA"), Con-

5    gress established the statutory framework for managing the National Forests. NFMA directs the Forest

6    Service to prepare and implement comprehensive land management plans for each national forest. 16

7    U.S.C. § 1604(a), (b). These Land and Resource Management Plans (or "Forest Plans") determine,

8    among other things, the availability and suitability of lands for resource management, as well as wildlife

9    and habitat conservation measures. 16 U.S.C. § 1604(b). Somewhat like a zoning ordinance, the Forest

10   Plan allows or prohibits some uses and establishes standards and guidelines which regulate future re-

11   source use.

12   **20.**    The Forest Service must implement individual, site-specific projects in accordance with

13   the Forest Plan. Once the Forest Plan is in effect, the Forest Service cannot take a proposed action that is

14   inconsistent with the Forest Plan. 36 C.F.R. §§ 219.2(b)(2); 219.15. Instead, it must either modify the

15   proposed action or amend the Forest Plan. 36 C.F.R. § 219.15(c).

16   **21.**    Prior to 1972, no overarching laws specifically governed off-road vehicle use on public

17   lands. The Forest Service managed motorized access to national forests pursuant to broad statutory

18   mandates, such as the Multiple Use Sustained Yield Act of 1960, 16 U.S.C. §§ 528-531. Because the

19   agency's primary focus was on managing the forests for timber and resource extraction, and because

20   ORV use was relatively limited, the Forest Service imposed few limitations on motor vehicle travel.

21   **22.**    In 1972, in response to growing ORV use, President Nixon issued an Executive Order to

22   "establish policies and provide procedures that will ensure that the use of off-road vehicles on public

23   lands will be controlled and directed so as to protect the resources of those lands, to promote the safety

24   of all users of those lands, and to minimize conflicts among the various uses of those lands." Exec.

25   Order No. 11644, 37 Fed. Reg. 2877 (Feb. 8, 1972). The Order established criteria by which federal

26   agencies were to develop regulations and administrative instructions for the designation of areas and

27   trails on which ORV use would be permitted. *Id*. at 2877.

28

---

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

**23.** Executive Order 11644, in its preface, explains that:

> The widespread use of [off-road] vehicles on the public lands – often for legitimate purposes but also in frequent conflict with wise land and resource management practices, environmental values, and other types of recreational activity – has demonstrated the need for a unified Federal policy toward the use of such vehicles on the public lands.

**24.** Section 3 of Executive Order 11644 mandates that the Forest Service designate "specific areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted…."

**25.** Section 3 of Executive Order further mandates that agency-specific off-road vehicle regulations "shall be in accordance with" a series of conservation-oriented designation criteria which obligate the Forest Service to "minimize" adverse impacts to forest resources and "minimize conflicts" between off-road vehicle use and other forest users.

**26.** On May 24, 1977, President Carter amended Executive Order 11644 to add Section 9. Section 9 obligates the Forest Service to "immediately close" areas or trails "causing considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands" and to keep such areas or trails closed "until such time" that the Forest Service "determines that such adverse effects have been eliminated and that measures have been implemented to prevent future recurrence."

**27.** The Forest Service first adopted regulations implementing Executive Order 11644 in 1974. The Forest Service has reorganized and amended those regulations several times. Among other things, the Forest Service is required to monitor motorized travel on national forest lands. 36 C.F.R. § 212.57. If such monitoring reveals considerable adverse effects to other resources, the Forest Service must close or restrict use until the problem is resolved to prevent recurrence. 36 C.F.R. § 212.52(2).

**28.** In recent years, increased ORV use and vehicle capabilities have dramatically increased ORV impacts, with ample evidence indicating this trend will continue. From 1982-2000, off-road vehicle use in the United States increased by over 109 percent, with ATV use growing 40 percent between 1997 and 2001. 70 Fed. Reg. 68264, 68285 (Nov. 9, 2005). As a consequence, in 2005, the

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

Forest Service overhauled the travel planning process, finalizing its "Travel Management Rule" ("TMR") to implement Executive Order 11644, as amended by Executive Order 11989 at 36 C.F.R. Part 212. 70 Fed. Reg. 68264, 68264 (Nov. 9, 2005). The TMR also includes provisions in Part 251 ("Land Uses") and Part 261 ("Prohibitions"). The Forest Service's 2005 travel management rules are intended to address, manage, and minimize ORV-related impacts in all National Forests.

29.    The TMR was promulgated not only to implement Executive Order 11644, as amended by Executive Order 11989, but also to revise outdated regulations. As the TMR explains:

> Current regulations at 36 CFR part 295, which provide for allowing, restricting, or prohibiting motor vehicle travel, were developed when OHVs were less widely available, less powerful, and less capable of cross-country travel than today's models. The growing popularity and capabilities of OHVs demand new regulations, so that the Forest Service can continue to provide these opportunities while sustaining the health of [National Forest System] lands and resources.

70 Fed. Reg. 68264, 68265.

30.    As noted in the final Travel Management Rule:

> These Executive orders direct Federal agencies to ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands.

31.    Specifically, the Federal Register notice explaining the need for the 2005 Travel Management regulations states that "[m]otor vehicles are a legitimate and appropriate way for people to enjoy their National Forests — *in the right places, and with proper management*." *Id*. at 68264 (emphasis added).

32.    The TMR mandates that each National Forest presumptively eliminate cross-country motor vehicle use and generally restrict motor vehicle use to designated roads and trails. As explained by the TMR, "the magnitude and intensity of motor vehicle use have increased to the point that the intent of [Executive Order] 11644 and [Executive Order] 11989 cannot be met while still allowing unrestricted cross-country travel." 70 Fed. Reg. 68264, 68265.

33.    These regulations provide in part that: "[m]otor vehicle use on National Forest System roads, on National Forest System trails, and in areas on National Forest System lands shall be designated by vehicle class and, if appropriate, by time of year by the responsible official on administrative units or

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

Ranger Districts of the National Forest System." 36 C.F.R. § 212.51(a). The regulations set forth "[g]eneral criteria" the Forest Service must employ in designating roads, trails, and areas for motor vehicle use in National Forests:

> …the responsible official shall consider effects on National Forest System natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails, and areas that would arise if the uses under consideration are designated; and the availability of resources for that maintenance and administration.

36 C.F.R. § 212.55(a).

**34.**     Further, there are "[s]pecific criteria" the Forest Service must apply when designating trails and areas for motor vehicle use, with the stated objective of minimizing damage to soil, watersheds, vegetation, wildlife harassment and habitat disruption, user conflicts, and other forest resources. 36 C.F.R. § 212.55(b)(1)-(4). Additionally, the Agency must consider "[c]ompatibility of motor vehicle use with existing conditions in populated areas, taking into account sound, emissions, and other factors." *Id*. at § 212.55(b)(5).

**35.**     USFS regulations require the Forest Service to provide public notice and allow for public involvement in designating or revising use of trails and off-road areas. 36 C.F.R. § 212.52.

**36.**     The route designation process culminates in the Forest Service's adoption and publication of a Motor Vehicle Use Map ("MVUM") "reflecting designated roads, trails, and areas" that can be utilized by motor vehicles in the forest. 36 C.F.R. §§ 212.1, 212.50, 212.56. The MVUM may cover an entire forest or individual ranger districts and depicts routes that are open to motor vehicle use. The Forest Service's adoption and publication of a MVUM completes the designation process and results in the official and enforceable prohibition of motor vehicle use anywhere off of the designated system. 36 C.F.R. § 261.13. The Forest Service may subsequently revise these designations, but revisions must include public participation consistent with NEPA. 36 C.F.R. §§ 212.54, 212.52(a).

**37.**     The Forest Service's motorized travel designation and use regulations were enacted through formal notice-and-comment rule making procedures, and codify and clarify the two earlier Executive Orders designed to control and minimize the adverse effects of motorized travel on public lands.

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

Executive Order 11644, signed by President Nixon in 1972, required federal agencies – including the Forest Service – to designate routes for motorized travel in limited areas; to mark areas and routes open to motorized travel; to provide the public with maps depicting such classifications and designations; to minimize the effects of motorized travel on specifically identified natural resources; and to monitor ORV impacts on public lands. Five years later, in 1977, President Carter signed Executive Order 11989, giving federal agencies additional direction and authority to control motorized travel on public lands. Executive Order 11989 empowered federal agencies to adopt a "closed, unless signed open" policy for motorized travel, and to immediately close to motorized travel public lands suffering from damage.

38.     Together, this Executive Order and the regulations provide the legal standards that govern and guide the Forest Service in determining whether, where, when, and to what extent to allow motorized vehicle use on National Forest lands. They establish the basis for enforcement of prohibitions of motor vehicle use by the public anywhere off of the designated routes.

### The National Environmental Policy Act

39.     Congress enacted NEPA to, among other things, "encourage productive and enjoyable harmony between man and his environment" and to promote government efforts "which will prevent or eliminate damage to the environment." 42 U.S.C. § 4321.

40.     To fulfill this goal, NEPA requires federal agencies to prepare an environmental impact statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4.

41.     "Major federal action" includes actions with effects that may be major and which are potentially subject to federal control and responsibility. 40 C.F.R. § 1508.18. "Actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies; new or revised agency rules, regulations, plans, policies, or procedures; and legislative proposals." *Id.*

42.     If an agency is unsure whether an EIS is required, an Environmental Assessment ("EA") must be prepared to determine whether or not the action will have a significant effect on the environment. 40 C.F.R. § 1508.9.

43.     An action's "significance" with respect to the environment requires consideration of context and intensity. 40 C.F.R. § 1508.27. "Effects" include "ecological, aesthetic, historic, cultural, economic, social, or health, whether direct, indirect, or cumulative." 40 C.F.R. § 1508.8. "Human environment" is interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment. 40 C.F.R. § 1508.14.

44.     The EIS should describe "any adverse environmental effects which cannot be avoided should the proposal be implemented." 42 U.S.C. § 4332(2)(C)(ii). Overall, an EIS must "provide [a] full and fair discussion of significant environmental impacts" associated with a federal decision and "inform decision-makers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1.

45.     An EIS also must identify direct, indirect, and cumulative impacts for each reasonable alternative. 40 C.F.R. § 1502.16. Cumulative effects are "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7. NEPA's implementing regulations also require the agency to analyze possible mitigation measures that may lessen adverse impacts. 40 C.F.R. § 1508.25(b)(3); 40 C.F.R. § 1502.14(f); 40 C.F.R. § 1502.16(h); 40 C.F.R. § 1505.2(c).

46.     The Forest's currently-designated ORV routes—those not challenged in this case—have never been subject to a thorough environmental review under the NEPA. In its current maps of OWNF's Entiat-Mad River ORV route system, the Forest Service describes those ORV routes as "some of the best trail riding in the country." Despite the superlatives it attributes to this ORV system, the Forest Service has failed and refused to produce a comprehensive NEPA analysis for it, ignoring the 1999 *Goose-Maverick* ruling in which this Court stated:

> …the ORV trail system in this case came about as a result of historic use of motorcycles in the area, … and subsequent ORV projects for which no environmental impact statement was ever written. …Nothing in the administrative record suggests that any environmental impact statement has ever been filed with respect to the [Entiat-Mad River] ORV

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

system as a whole, or with respect to significant aspects of it. Within the NEPA scheme, however, any proposal adding to this ORV system that may adversely affect the environment must be examined in light of the entire existing system. … [W]hile the ORV trail system to which the Goose-Maverick, Ramona, and Three Creek projects tie already exists, the impact of the existing system, and whether it can bear an increase in use, has never been carefully considered.

*NCCC v. USFS*, *supra*, 98 F.Supp. 2d at 1198-99.

**47.**     Similarly, in 2006, OWNF's Lower Mad River Trail ORV project was enjoined by this Court under NEPA because only an EA had been prepared; this Court ruled that the project could not go forward until a full EIS was prepared. *Mountaineers v. USFS*, *supra*, 445 F.Supp. 2d 1235. This Court noted that the ORV project "would also result in the continued *increase* of motorized traffic throughout the numerous ORV trail systems connected in one way or another to the Mad River system." *Id*. at 1238 (emphasis added). The traffic increase would have been on ORV routes that were already open to ORV traffic. "Indeed, [this] is only one of numerous related projects that are either proposed, under way, or have recently been completed that the Forest Service itself recognizes will have the ultimate effect, whether intended or not, of increasing the use of ORVs in the Forest." *Id*. at 1239. This Court also rejected OWNF's plan to build the ORV project first and then apply "adaptive management" later:

These strategies amount … to a "build-first, study later" approach to resource management. This backward-looking decision making is not what NEPA contemplates. As the Ninth Circuit instructs, it is not "appropriate to defer consideration of cumulative impacts to a future date. 'NEPA requires consideration of the potential impact of an action *before* the action takes place.' " [citations omitted].

*Id*. at 1250.

## VI.     FACTUAL BACKGROUND

### The Okanogan-Wenatchee National Forest

**48.**     The Okanogan-Wenatchee National Forest is located along the east slopes of the Cascade Range in Washington State. The Forest contains over 4,000,000 acres of forestlands of diverse topography, soil type, vegetation, and habitat type. Visitors seek out the diverse recreational opportunities of OWNF for many purposes such as camping, hiking, skiing, mountaineering, biking, hunting, fishing, bird and nature watching and whitewater boating.

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

**49.**     The Okanogan and Wenatchee National Forests are divided into seven geographic admin-istrative units called Ranger Districts. The Ranger Districts on the OWNF include: Cle Elum, Entiat, Chelan, Wenatchee River, Methow Valley, Naches, and Tonasket. The District Ranger and his or her staff are responsible for the management, protection, and use of the resources on these lands to benefit the American people.

**50.**     The OWNF has contained—and still does contain—forests with extremely high wilderness values. Some lands formerly in OWNF became part of the North Cascades National Park Complex in 1968, and several OWNF wilderness areas were protected in the Wilderness Act of 1964, the Alpine Lakes Wilderness Act of 1976 and the Washington Wilderness Act of 1984. Currently located within OWNF are Pasayten Wilderness, Chelan-Sawtooth Wilderness, and the eastern portions of several wilderness areas that straddle the Cascade crest, including Glacier Peak Wilderness, Henry M. Jackson Wilderness, Alpine Lakes Wilderness, Norse Peak Wilderness, William O. Douglas Wilderness and Goat Rocks Wilderness.   Additional OWNF lands have been designated as "inventoried roadless areas" ("IRAs") which are 5,000 acre or larger blocks of primarily "roadless" lands identified during the Forest Service's Roadless Area Review and Evaluation inventories in the 1970s.

**51.**     Some of the new WATV routes that are challenged in this action may impact parts of the OWNF that have high wilderness values. The Clover Spring WATV Route is adjacent to (and hugs the boundary of) the existing William O. Douglas Wilderness. The Forest Service has determined that some of the OWNF IRAs are suitable candidates for prospective Wilderness designation. In 1990, the Forest Service regarded the Entiat IRA, which adjoins Glacier Peak Wilderness, as an area with "high potential for wilderness [designation] as an individual area or as [an] addition to existing wilderness." The Entiat IRA is adjacent to one of the new WATV routes. In its Proposed Action for the Forest Plan Revision, which is currently underway, OWNF recommended Wilderness designation for about 100,000 acres of IRAs in OWNF. Plaintiffs responded by asking OWNF to recommend many more acres, including the Entiat IRA.

**52.**     The Forest provides habitat for numerous endangered, threatened, and sensitive wildlife species, species of concern, and management indicator species, including: Canada lynx; gray wolf;

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

wolverine; grizzly bear; fisher; mountain goat; Townsend's big-eared bat; western gray squirrel; bald eagle; northern spotted owl; common loon; eared grebe; sandhill crane; peregrine falcon; gray flycatcher; ferruginous hawk; upland sandpiper; pileated woodpecker; northern goshawk; northwestern pond turtle; sharptail snake; striped whipsnake; California mountain kingsnake; Larch Mountain salamander; Upper Columbia steelhead; Upper Columbia River bull trout; Upper Columbia spring chinook salmon; and westslope cutthroat trout. A variety of sensitive and rare plant species can likewise be found within OWNF, which provides habitat for Tweedy's Lewisia; showy stickseed; Wenatchee checker-mallow; and Ute ladies' tresses.

53.     Water is a major resource on OWNF. The surface waters of OWNF are generally of high quality all year around. Numerous streams and lakes provide key features for a substantial share of all recreation activities.

54.      Unpaved roads on OWNF lands are a primary source of erosion and sedimentation of streams as compared to other management activities in the Forest.

### Management of ORV Use on OWNF lands

55.     ORVs have significant, negative impacts on practically every aspect of the natural environment wherever they are used. ORV use degrades air and water quality. ORV use impairs others' ability to enjoy natural sights, sounds and smells. ORV use creates safety hazards for motorized travelers, ORV users, and others. Most natural areas sustain damage due to the impacts of ORVs. These impacts include, but are not limited to, damage to soils and vegetation; harm to wildlife and wildlife habitat; degraded water quality and riparian health; spread of invasive weeds; starting wildfires; and harm to cultural resources. During his presentation to the Izaak Walton League in July 2003, Dale Bosworth, former Chief of the U.S. Forest Service, described the harm ORVs can inflict on forest resources: "Each year, the national forests and grasslands get hundreds of miles of unauthorized roads and trails due to repeated cross-country use. We're seeing more and more erosion, water degradation, and habitat destruction. We're seeing more and more conflicts between users."

56.     ORV use occurs on designated routes in each ranger district in the OWNF. The Forest Service designates which roads ORV can use by issuing maps depicting the locations of roads and trails

and type of traffic allowed on each road and trail on OWNF lands. Roads on OWNF lands are closed to ORV use unless the Forest depicts them as being open to ORV use on an official Forest Service map. Some or all of the roads comprising the new WATV routes were closed to WATV use until the Forest Service issued the decision challenged in this case.

<b>The OWNF's Unfinished Travel Management Process and</b>

<b>The Decision Challenged in this Case</b>

**57.**     To comply with the Travel Management Rule and NEPA, OWNF conducted rounds of scoping in 2007 and 2009 with public meetings and detailed maps of proposed new ORV routes. The 2007 maps included 868 miles of proposed "mixed-use" roads where non-street-legal ATVs would be allowed to ride on existing roads, including road sections now proposed as WATV routes; 113 miles of proposed new ORV routes other than existing roads, such as new trail construction; and other proposed changes. Until late 2014, OWNF said it was planning to issue a Travel Management Draft EIS that would have included a range of alternatives on which the public could comment. NEPA analysis is especially needed in roadless areas where ORV use became entrenched without NEPA compliance and without any analysis of ORV impacts, including in the Teanaway, Entiat-Mad River and Chelan-Sawtooth roadless areas.

**58.**     On January 13, 2015, OWNF conducted a meeting with proponents of the new WATV routes to review proposed routes submitted by WATV dealers and other WATV users.

**59.**     In 2013, the Washington State Legislature enacted House Bill 1632, which authorized local jurisdictions (including counties, towns and National Forests) to allow WATV use on roads with speed limits of up to 35 miles per hour. Unlike non-street-legal ATVs, which can be driven off-road by underage youth without driver licenses, HB 1632 defined WATVs as having license plates, headlights, taillights and other safety equipment, and WATV drivers must have a valid driver license. HB 1632 did not grant WATVs access to all public roads; with a few exceptions, WATVs are allowed on roads of a county or town only if that county or town has adopted an ordinance allowing WATVs on those roads. Several counties and towns have subsequently passed such ordinances. HB 1632 did not (nor could it)

exempt the Forest Service from compliance with federal laws such as NEPA or the Travel Management Rule.

60.     In March 2014, the OWNF Supervisor erroneously announced that HB 1632 meant that WATVs were "highway legal vehicles" allowed on all Forest roads. By May 2014 that directive was reversed by the Forest Service.

61.     In the summer and fall of 2014, unbeknownst to Plaintiffs, Defendants conducted meetings with proponents of the "pilot" WATV routes that were developed into the WATV routes challenged in this lawsuit. These meetings were not announced to the public.

62.     On December 22, 2014, OWNF released its latest Proposed Action under the Travel Management Rule. That Proposed Action did not include the new WATV routes challenged in this case. The Proposed Action was an abrupt reversal of the approach undertaken by OWNF for more than nine years in the Travel Management process. Instead of selecting one of the alternatives developed in prior scoping to change management of ORV use, the December 2014 Proposed Action simply memorialized OWNF's existing system of roads and trails open to motorized use and also proposed to implement the long-delayed but required ban on cross-country travel by ORVs.

63.     In January 2015, Plaintiffs submitted comments on this Proposed Action. One or more of the plaintiffs contended that USFS could only open new WATV routes if it first went through the Travel Management process and evaluated likely environmental impacts under NEPA. OWNF failed to include the proposed WATV routes in the Travel Management process. OWNF failed to explain the omission of the WATV routes from the Travel Management process.

64.     On April 24, 2015, OWNF met with proponents of the WATV routes to discuss law enforcement, monitoring, signage and public communication about the new WATV routes. At that meeting, OWNF distributed a memorandum dated April 2015 and entitled "WATV Operating Guidelines, Monitoring, Enforcement, and Communication" (hereinafter "April 2015 Memorandum"). A true and correct copy of the April 2015 Memorandum is attached hereto as Exhibit A. On page seven of the April 2015 Memorandum, OWNF indicates that it will announce the opening of the new WATV routes on June 22, 2015 and will open the new WATV routes for use on June 26, 2015. The April 2015

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

memorandum fails to mention the ongoing Travel Management process. The April 2015 memorandum states "Issuance of an OHV area map which includes the designated WATV routes will serve as the decision document." *See, e.g*., Exhibit A at 1.

65.   The April 2015 Memorandum incorrectly states that "NEPA is not required to include WATVs on roads that are already opened to motorized use." The April 2015 Memorandum describes numerous impacts that trigger the Forest Service's obligation to review the new WATV routes pursuant to NEPA. The April 2015 Memorandum acknowledges that one purpose of opening the WATV routes is to increase ORV use on the OWNF. The April 2015 Memorandum states, "Where possible, routes were designed to connect to existing ATV/4X4/Jeep trails on [National Forest] land …."

66.   On May 8, 2015, OWNF released draft maps showing six proposed new WATV routes. The maps showing the six proposed new WATV routes were dated May 7, 2015. The six new proposed WATV routes comprise approximately 350 miles of National Forest roads.

67.   On June 22, 2015, OWNF distributed an updated version of the April 2015 Memorandum (hereinafter "June 2015 Memorandum"). A true and correct copy of the June 2015 Memorandum is attached hereto as Exhibit B. On page ten of the June 2015 Memorandum, OWNF indicates that it will announce the opening of the new WATV routes on June 22, 2015 and will open the new WATV routes for use on June 26, 2015. Just like the April 2015 Memorandum, the June 2015 Memorandum fails to mention the ongoing Travel Management process. Slightly reformulating the language of the April 2015 Memorandum, the June 2015 Memorandum states, "Issuance of a WATV route map which includes the designated WATV routes will serve as the authorization document." *See, e.g*., Exhibit B at 2.

68.   The June 2015 Memorandum incorrectly states that "NEPA is not required to include WATVs on roads that are already opened to motorized use." *Id*. The June 2015 Memorandum describes numerous impacts that trigger the Forest Service's obligation to review the new WATV routes pursuant to NEPA. For example, the June 2015 Memorandum acknowledges that one purpose of opening the WATV routes is to increase ORV use on the OWNF. *Id*. at 1. The June 2015 Memorandum states, "Where possible, routes were designed to connect to existing ATV/4X4/Jeep trails on [National Forest]

land …." *Id.* The new WATV routes will increase WATV traffic on Forest trails and thereby increase the impacts of WATV use in the Forest.

**69.** On information and belief, sometime before June 25, 2015 the Forest made a decision to change the allowable uses on numerous roads in the OWNF to accommodate new WATV routes. On information and belief, sometime before June 25, 2015 the Forest made a decision not to conduct NEPA review of its opening of the new WATV routes.

**70.** On June 25, 2015, the Forest announced that "Several routes for wheeled ATVs will open on June 26 across the Okanogan-Wenatchee National Forest." In its announcement, the Forest noted that "Maps of the routes are available on the Forest website at www.fs.usda.gov/goto/okawen/watv." Also in its June 25, 2015 announcement, the Forest stated that "All routes are on roads that are already open to other motorized vehicles, but at this time no other forest roads are open to WATVs." The Forest also stated in that announcement that "Opening these routes honors our commitment to provide public access that meets the needs of different user groups and local communities…. We have partnered with WATV users and environmental groups to help us monitor impacts and educate visitors on the need to stay on authorized roads."

**71.** Attached as Exhibit C-1 to this complaint is a true and correct copy of the Forest Service map that depicts the Bald Mountain WATV Route in the Naches Ranger District of OWNF. The Bald Mountain WATV Route is thirty-four miles long. Before OWNF issued the map depicting the Bald Mountain WATV route, WATVs were not permitted on the National Forest roads that comprise that route.

**72.** Attached at Exhibit C-2 to this complaint is a true and correct copy of the Forest Service map that depicts the Clover Spring WATV Route in the Naches Ranger District of OWNF. The Clover Spring WATV Route is fifty miles long. Before OWNF issued the map depicting the Clover Spring WATV route, WATVs were not permitted on the National Forest roads that comprise that route.

**73.** Attached as Exhibit C-3 to this complaint is a true and correct copy of the Forest Service map that depicts the Entiat Ridge WATV Route in the Entiat and Wenatchee River Ranger Districts of OWNF. The Entiat Ridge WATV Route is seventy-two miles long. Before OWNF issued the map

depicting the Entiat Ridge WATV route, WATVs were not permitted on the National Forest roads that comprise that route.

74.     Attached as Exhibit C-4 to this complaint is a true and correct copy of the Forest Service map that depicts the Grade-Oss WATV Route in the Chelan and Methow Valley Ranger Districts of OWNF. The Grade-Oss WATV Route is sixty-two miles long. Before OWNF issued the map depicting the Grade-Oss WATV route, WATVs were not permitted on the National Forest roads that comprise that route.

75.     Attached as Exhibit C-5 to this complaint is a true and correct copy of the Forest Service map that depicts the Table Mountain WATV Route in the Cle Elum Ranger District of OWNF. The Table Mountain WATV Route is forty-one miles long. Before OWNF issued the map depicting the Table Mountain WATV route, WATVs were not permitted on the National Forest roads that comprise that route.

76.     Attached as Exhibit C-6 to this complaint is a true and correct copy of the Forest Service map that depicts the Thunder Mountain WATV Route in the Methow Valley and Tonasket Ranger Districts of OWNF. The Thunder Mountain WATV Route is ninety-one miles long. Before OWNF issued the map depicting the Thunder Mountain WATV route, WATVs were not permitted on the National Forest roads that comprise that route.

77.     Prior to the issuance of the maps attached hereto as Exhibits C-1 to C-6, WATV use was prohibited on OWNF roads.

78.     The Forest Service maps depicting the WATV routes for the OWNF, which are attached hereto as Exhibits C-1 to C-6, change the allowable uses on some or all of the National Forest roads that comprise the WATV routes. Defendants' decision to open the new WATV routes in the OWNF is final agency action. Defendants' decision to open the new WATV routes in the OWNF is reviewable pursuant to the APA.

79.     As of the date of the filing of this complaint, OWNF had not issued a decision or NEPA document on its December 2014 Travel Management Proposed Action. As of the date of the filing of this complaint, ONWF had not issued the Motor Vehicle Use Map required by the Travel Management

Rule. OWNF did not comply with the Travel Management Rule when it opened the new WATV routes challenged in this action.

**80.**     The new WATV use designations are reasonably likely to cause environmental impacts. The Forest expects the WATV routes challenged in this action to increase ORV use on the OWNF. In the June 2015 Memorandum, OWNF stated: "The intent of the WATV program is to increase safe and responsible motorized recreational opportunities on the Okanogan-Wenatchee National Forest." Exhibit B at 1. The document continues by stating that "[w]here possible, routes were designed to connect to existing ATV/4X4/Jeep trails on [National Forest] land," *id*., which will promote increased ATV traffic and impacts on those trails. The Forest recognizes that ORV use will likely cause environmental impacts. In the June 2015 Memorandum the Forest stated: "Monitoring will help determine environmental effects directly related to motorized routes on the Okanogan-Wenatchee National Forest being open to WATVs and when mitigation is needed to modify routes." *Id*. at 2. The Forest acknowledges that "[s]ome parts of the Okanogan-Wenatchee National Forest have experienced problems with damage to natural resources caused by motorized vehicles traveling off roads. Resource damage can result in limiting public access." *Id*. at 6.

**81.**     OWNF knows that opening the new WATV routes will adversely impact the environment. In text associated with the Forest Service maps depicting the WATV routes, the Forest states:

> Mudding is not permitted anywhere on the forest. Mudding destroys wildlife habitat and ecosystems. It rips up plants, compacts soil, harms wildlife, and costs a lot of money to fix. Spinning tires on plants destroys them, leaving behind bare dirt. When plants are gone, bare soil can wash into nearby streams and lakes. Muddy streams and lakes can be bad for fish, wildlife, irrigators, recreationists, and towns dependent on clean water and tourism for survival. Driving in stream beds can cause erosion and put excessive amounts of silt into streams, destroying the habitat of sensitive aquatic species including fish and plants. Restoring a damaged area is expensive. Smoothing ruts, reseeding or planting, and repairing roadbeds costs a lot of money. When the culprit is not caught, every taxpayer covers the restoration costs, which diverts money from other programs.

OWNF Website at: http://www.fs.usda.gov/alerts/okawen/alerts-notices/?aid=17859.

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

82.     Before opening the WATV routes, OWNF failed to review the environmental effects of its decision to authorize the new WATV routes. OWNF did not issue a finding of no significant impacts for its decision to open the WATV routes. OWNF did not issue an environmental assessment that evaluates the environmental effects of its decision to open the new WATV routes. OWNF did not issue an environmental impact statement that evaluates the environmental effects of its decision to open the new WATV routes. Forest Service regulations do not categorically exclude from NEPA review the new WATV routes.

## VII.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### The Forest Service's Decision Violates the Travel Management Rule
### (Failure to Issue Maps Under TMR)

83.     Plaintiffs hereby incorporate by this reference the allegations presented in all preceding paragraphs.

84.     Forest Service travel management regulations establish procedures for designating what roads, trails and areas are open to what classes of motor vehicles. A road is not simply open or closed to all motorized traffic, instead the regulations require that officials determine what class or classes of vehicles are suitable for mixed use on a particular road. 36 C.F.R. §212.51(a). Any changes in prior use designations are similarly regulated. 36 C.F.R. §212.54.

85.     The Travel Management Rule requires that "[m]otor vehicle use on National Forest System roads, on National Forest System trails, and in areas on National Forest System lands *shall* be designated by *vehicle class* and, if appropriate, by time of year by the responsible official on administrative units or Ranger Districts of the National Forest System. . . ." 36 C.F.R. § 212.51(a) (emphasis added).

86.     All motorized use designations, including revisions of classes of vehicles that may use a particular road, are to be made only after completion of a public process under NEPA. 36 C.F.R. §212.52(a).

87.     Defendants' amendments of the road usage classifications complained of herein were not made in compliance with the Forest Service Travel Management Rule.

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

88.    Defendants' actions complained of herein are arbitrary, capricious, an abuse of discretion, in excess of statutory authority and limitations, short of statutory right, and not in accordance with the law and procedures required by law because the Forest Service amended road usage classifications in violation of the Forest Service Travel Management Rule. 5 U.S.C. §§ 706(2)(A), (C), (D).

### SECOND CLAIM FOR RELIEF
### The Forest Service's Decision Violates the Travel Management Rule
### (Failure to Demonstrate Compliance with Minimization Criteria)

89.    Plaintiffs hereby incorporate by this reference the allegations presented in all preceding paragraphs.

90.    The Travel Management Rule, 36 C.F.R. Part 212, states the general criteria the Forest Service must evaluate under the Executive Order when designating roads, trails, and areas for motor vehicle use in National Forests, including natural and cultural resources, public safety, provision of recreational opportunities, access needs, and user conflicts. 36 C.F.R. § 212.55(a). In addition, the Regulations set out specific criteria the Forest Service must apply when designating trails and areas for motor vehicle use. These confer a requirement that the Forest Service must minimize damage to soil, watersheds, vegetation, and other forest resources, and also must minimize wildlife harassment, habitat disruption, and user conflicts. 36 C.F.R. § 212.55(b).

91.    OWNF states that "Where possible, [the WATV] routes were designed to connect to existing ATV/4X4/Jeep trails on [National Forest] land …" See, Exhibit B, attached hereto, at 1. In other words, the WATV routes' impacts will not be limited to the road system, but will occur on trails and or areas as well, as the connections will increase WATV traffic on Forest trails, off the road system.

92.    There is no evidence that the Forest Service applied the Travel Management Rule's general and specific criteria before adopting and publishing the new WATV route maps. In particular, there is no evidence that Defendants considered or applied any of the general and specific minimization criteria required by the Travel Management Rule when designating the new WATV routes.

93.    By issuing the new WATV routes and formally opening 350 miles of Forest Roads to WATV use without first applying the Travel Management Rule's criteria, the Forest Service has acted in

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

a manner that is arbitrary, capricious, an abuse of discretion, not in accordance with the law, and without observance of procedure required by law. 5 U.S.C. §§ 706(2)(A), (C), (D).

### THIRD CLAIM FOR RELIEF
### The Forest Service's Decision Violates the Travel Management Rule
### (Failure to Undertake Mixed Use Analysis)

94.     Plaintiffs hereby incorporate by this reference the allegations presented in all preceding paragraphs.

95.     "In designating NFS roads, NFS trails, and areas on NFS lands for motor vehicle use, consider, as applicable, both the general and specific criteria in 36 CFR 212.55(a) through (c). The general criteria in 36 CFR 212.55(a) apply to roads, trails, and areas. The specific criteria in 36 CFR 212.55(b) apply to trails and areas. The specific criteria in 36 CFR 212.55(c) apply to roads." Forest Service Manual ("FSM"), § 7715.5.

96.     The general road designation criteria established by the Travel Management Rule state:

the responsible official shall consider effects on National Forest System natural and cultural resources, public safety, provision of recreational opportunities, access needs, conflicts among uses of National Forest System lands, the need for maintenance and administration of roads, trails, and areas that would arise if the uses under consideration are designated; and the availability of resources for that maintenance and administration.

36 C.F.R. § 212.55(a).

97.     Accordingly, "[a] decision to allow motorized mixed use on an NFS road must be informed by engineering analysis." FSM § 7715.5(1)(b).

98.     Additionally, when designating motorized use of roads, the Forest Service is required to consider the: "(1) Speed, volume, composition, and distribution of traffic on roads; and (2) Compatibility of vehicle class with road geometry and road surfacing." 36 C.F.R. § 212.55(c).

99.     There is no evidence that the Forest Service performed a mixed use analysis or an engineering analysis before adopting and publishing the new WATV route maps. In particular, there is no evidence that Defendants considered or applied any of the general and specific criteria pertaining to mixed use analyses required by the Travel Management Rule, 36 C.F.R. § 212.55 or the Forest Service

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

Manual. Indeed, the June 2015 Memorandum states "Mixed use analysis is not required to include WATVs on these routes because the roads are already opened to a variety of motorized uses and the WATVs are being operated by licensed drivers." Exhibit B at 2.

100.    By issuing the WATV route maps and formally opening 350 miles of Forest Roads to WATV use without first applying the criteria pertaining to mixed use analysis, the Forest Service has acted in a manner that is arbitrary, capricious, an abuse of discretion, not in accordance with the law, and without observance of procedure required by law. 5 U.S.C. §§ 706(2)(A), (C), (D).

### FOURTH CLAIM FOR RELIEF
### The Forest Service's Decision Violates the Travel Management Executive Orders
### (Failure to Demonstrate Compliance with Minimization Criteria)

101.    Plaintiffs hereby incorporate by this reference the allegations presented in all preceding paragraphs.

102.    The Forest Service violated Executive Order 11644, § 3, as amended by Executive Order 11989, and the Forest Service's travel management regulations, 36 C.F.R. § 212.55, because the Forest Service failed to minimize damage to the forest resources and the environment, and failed to minimize conflicts with non-motorized recreation users, by failing to include analysis of the six proposed WATV routes in the OWNF Travel Management process and by developing and opening the WATV routes outside the OWNF Travel Management process.

103.    Executive Order 11644, §3, as amended, mandates that Forest Service regulations must be in accordance with a set of designation criteria which provide that route designations must, *inter alia*, "minimize damage to soil, watershed, vegetation, or other resources of the public lands," "minimize harassment of wildlife or significant disruption of wildlife habitats," and "minimize conflicts between off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors."

104.    Defendants' actions complained of herein are arbitrary, capricious, an abuse of discretion, in excess of statutory authority and limitations, short of statutory right, and not in accordance with the

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

law and procedures required by law because the Forest Service failed to minimize damage to the environment from motorized recreation use and associated motorized routes and failed to minimize conflicts with non-motorized recreation users caused by motorized recreation use. 5 U.S.C. §§ 706(2)(A), (C), (D).

## FIFTH CLAIM FOR RELIEF
### The Forest Service Decision Violates NEPA

**105.** Plaintiffs hereby incorporate by this reference the allegations presented in all preceding paragraphs.

**106.** As noted above, all National Forest motorized use designations, including revisions of classes of vehicles that may use a particular road, are to be made only after completion of a public process under NEPA. 36 C.F.R. §212.52.

**107.** According to OWNF, "NEPA is not required to include WATVs on roads that are already opened to motorized use," but OWNF contradicts that by describing numerous impacts that trigger NEPA. *See*, Exhibit B, attached hereto, at 2. OWNF states that "Where possible, [the WATV] routes were designed to connect to existing ATV/4X4/Jeep trails on [National Forest] land …" *Id*. In other words, the WATV routes' impacts will not be limited to the road system, but will occur on trails and/ or areas as well, as the connections will increase WATV traffic on Forest trails, off the road system.

**108.** The designation of any road, trail or area for motorized travel is a project level decision and requires site-specific analysis under NEPA. Instead, OWNF has completely failed to provide the required site-specific analysis required by NEPA at the project level. The OWNF decision fails to provide site-specific analysis of the direct, indirect, or cumulative impacts of the existing road system, of the increased use of the existing road system by WATVs, upon stream temperature, sediment delivery, flow regime, water quality, aquatic species, and aquatic habitat.

**109.** Defendants' failure to conduct any NEPA analysis whatsoever for its WATV decision, and failure to adequately consider site-specific analysis of the direct, indirect, or cumulative impacts to the environment, in particular to aquatic species, habitat, and water resources, is arbitrary, capricious, an

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

abuse of discretion, in excess of statutory authority and limitations, short of statutory right, and not in accordance with the law and procedures required by law. 5 U.S.C. §§ 706(2)(A), (C), (D).

## SIXTH CLAIM FOR RELIEF
### The Forest Service Failed To Take A Hard Look At Impacts To The Environment

110.    Plaintiffs hereby incorporate by this reference the allegations presented in all preceding paragraphs.

111.    The Forest Service, pursuant to NEPA and NEPA's implementing regulations, must take a hard look at the direct, indirect, and cumulative environmental consequences of a proposed action and its alternatives to the human environment. *See* 42 U.S.C. § 4332(2)(C)(i); 40 C.F.R. §§ 1502.14(a), 1502.16, 1508.7, 1508.8, and 1508.14.

112.    Defendants failed to take a hard look at impacts to the environment, in particular wildlife and water resources, caused by motorized use and both system and non-system routes.

113.    Defendants' actions complained of herein are arbitrary, capricious, an abuse of discretion, in excess of statutory authority and limitations, short of statutory right, and not in accordance with the law and procedures required by law, because the Forest Service failed to take a hard look at direct, indirect, and cumulative impacts to the environment. 5 U.S.C. §§ 706(2)(A), (C), (D).

## SEVENTH CLAIM FOR RELIEF
### Defendants' Failure to Demonstrate the Decision's Compliance
### With Other Laws Violates NEPA

114.    Plaintiffs hereby incorporate by this reference the allegations presented in all preceding paragraphs.

115.    NEPA requires that OWNF's decisions comply with other laws, including Executive Orders, the Travel Management Rule and the Endangered Species Act, ("ESA"), 16 U.S.C. § 1531 *et seq.*, 40 C.F.R. §§ 1500.2(a), 1502.2(d), 1502.25(a)

BAHR LAW OFFICES, P.C.
1035 ½ Monroe Street
Eugene, OR  97402
(541) 556-6439

116.    The ESA requires federal agencies to utilize their full authority to conserve threatened and endangered species. 16 U.S.C. § 1536(a)(1). The Forest Service is also required to avoid actions that may cause species to become threatened or endangered. FSM § 2670.12(3).

117.    Defendants failed to use their full authority and discretion to advance species conservation, including by failing to include a proactive program to meaningfully reduce the large and widespread impacts of its roads and their use on listed species. Instead, the decision exacerbates these adverse impacts.

118.    Executive Order 11644 and the Travel Management regulations require that the Forest Service designate motorized routes and usage areas to minimize damage to soils, watersheds, and other resources; to minimize disruption of wildlife and their habitat; and to minimize conflicts with other recreational uses. E.O. 11644 § 3; 36 C.F.R. § 212.55(b)(1)-(4). Additionally, the Agency must consider "[c]ompatibility of motor vehicle use with existing conditions in populated areas, taking into account sound, emissions, and other factors." *Id*. at § 212.55(b)(5).

119.    Defendants' decision unlawfully elevates a level of motorized use on the OWNF over the other multiple use goals of minimizing damage to soils, watersheds, and other resources; minimizing disruption of wildlife and their habitat; and minimizing conflicts with other recreational uses. In doing so the Forest Service also failed to avoid impacts to wildlife that may cause them to become threatened or endangered.

120.    Defendants' failure to ensure that the challenged decision complies with other laws is therefore arbitrary, capricious, an abuse of discretion, in excess of statutory authority and limitations, short of statutory right, and not in accordance with the law and procedures required by law. 5 U.S.C. §§ 706(2)(A), (C), (D).

### PRAYER FOR RELIEF

**Plaintiffs respectfully request that this Court:**

1.    Declare that the Defendants violated the National Environmental Policy Act, Administrative Procedures Act, Executive Order 11644, as amended, and relevant implementing regulations, including the Travel Management Rule, in deciding to open the six new WATV routes on

350 miles of OWNF roads;

2.      Order the Defendants to undertake a legally sufficient travel management planning process before opening OWNF roads to WATV use;

3.      Enjoin the Forest Service and all other persons from implementing or relying upon the Forest Service's decision to open the six new WATV routes at issue in this complaint;

4.      Award Plaintiffs their costs of suit and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

5.      Grant Plaintiffs such other and further relief as the Court deems just and equitable.

Respectfully submitted this 30th day of June, 2015.

 s/Paul Kampmeier
Paul Kampmeier (Washington Bar No. 31560)
Kampmeier & Knutsen PLLC
615 Second Avenue, Suite 360
Seattle, Washington 98104
(206) 223-4088 ext. 4
paul@kampmeierknutsen.com

 s/ David Bahr
David Bahr (*pro hac vice* pending)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439 Voice
davebahr@mindspring.com

Attorneys for Plaintiffs